**FILED**

**June 19, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:40 PM**



### TENNESSEE DIVISION OF WORKERS' COMPENSATION
### WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Employee:  Mario Mace | ) | Docket No.  2015-06-0059 |
| | ) | |
| Employer: Express Services | ) | State File No.  88006-2014 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 19th day of June, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **William Hicky** | | | | | X | will@hickylaw.com |
| **Gregory H. Fuller** | | | | | X | ghfuller@mijs.com |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov

**FILED**

**June 19, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 12:40 PM**



# TENNESSEE DIVISION OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Employee: Mario Mace ) | Docket No. 2015-06-0059 |
| ) | |
| Employer: Express Services ) | State File No. 88006-2014 |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Kenneth M. Switzer, Chief Judge ) | |

---

### Affirmed and Remanded – June 19, 2015

---

## OPINION AFFIRMING AND REMANDING INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION CLAIMS

Employee was involved in a work accident when stacks of bread trays fell on him. Employer initially accepted the accident as compensable, but later denied the treating physician's request for authorization to perform left shoulder surgery, contending that Employee's condition was not caused by the work accident and/or that it pre-existed the work accident. Following an expedited hearing, the trial court concluded that Employee presented sufficient evidence indicating that he is likely to prevail at a hearing on the merits and ordered Employer to provide additional medical benefits. Employer appealed, arguing that the treating physician could not state within a reasonable degree of medical certainty that Employee's medical condition arose primarily out of the work accident. Having carefully reviewed the record, we affirm.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge David F. Hensley and Judge Marshall L. Davidson, III, joined.

Gregory H. Fuller, Knoxville, Tennessee, for the employer-appellant, Express Services, Inc.

William Hicky, Nashville, Tennessee, for the employee-appellee, Mario Mace.

1

## Factual and Procedural Background

The employee, Mario Mace ("Employee"), is a 44-year-old resident of Humphreys County, Tennessee. He was employed by Express Services, Inc. ("Employer"), a temporary staffing service, and was assigned to work at Tennessee Bun Company in its shipping and receiving department. His job duties included unloading trailers, stacking racks and trays, and loading trays onto a tray wash machine.

On November 4, 2014, Employee was assisting in the transfer of stacks of bun trays into a freezer. The trays were stacked approximately seven feet high on rolling carts, with thirty-two stacks situated side-by-side in two rows of sixteen stacks each. A co-worker operated a forklift from behind, which pushed the carts into the freezer as Employee and another co-worker guided the stacks. According to Employee, when the stacks hit the threshold of the freezer, a broken wheel on one of the first carts caused the stacks to jam, resulting in a shifting of the stacks. Employee testified that the stacks "took my left arm and threw it behind me." In addition, Employee stated that "bun trays [were] falling on top of my head."

Employer presented the testimony of Robert Francis, an employee of Tennessee Bun Company. Mr. Francis was operating the forklift, which was approximately 30-35 feet from Employee at the time of the accident. According to Mr. Francis, when the cart jammed on the freezer threshold, "four or five of the stacks . . . on the left side of the stacks in the front all fell like a tower, straight." Other stacks then "buckled up" and were "jumbled together." Mr. Francis testified that he saw nothing fall on Employee's left shoulder and did not see his left arm thrown backwards. After the incident, Mr. Francis immediately left the forklift and went to assist Employee. According to Mr. Francis, Employee "told me it hit him in the left arm." He removed Employee's jacket and "noticed an indention [sic] of his arm." He did not notice any redness or other marks. Mr. Francis testified that Employee did not appear to have been injured and did not appear to need medical care. He later believed the incident had been "blown out of proportion."

Nevertheless, the incident was accepted as compensable and workers' compensation benefits were initiated. Employee received treatment primarily from Dr. Damon Petty, an orthopedic physician. In January 2015, Dr. Petty recommended left shoulder surgery to repair a torn rotator cuff and a labral tear in the left shoulder. Although Employer's utilization review agent deemed the recommended surgery medically necessary, Employer elected to deny further treatment on causation grounds. First, Employer noted that, according to the radiology reports, the labral tear was "chronic." As a result, Employer believed that this condition pre-existed the work accident. Second, Employer's counsel sent two questionnaires to Dr. Petty. On the first, Dr. Petty indicated that the need for rotator cuff surgery arose primarily from the work accident and that the labral tear may have been aggravated by the work accident.

2

However, in response to the second questionnaire, Dr. Petty indicated that, given the "varying accounts" of the incident as described by Employee and Mr. Francis, he could not state to a reasonable degree of medical certainty that Employee's left shoulder rotator cuff tear arose primarily out of the work accident.

On February 6, 2015, Employee filed a Petition for Benefit Determination ("PBD") seeking an Order compelling Employer to provide additional medical treatment as recommended by Dr. Petty.[1] Following unsuccessful mediation efforts, a Dispute Certification Notice ("DCN") was issued on March 20, 2015, and a Request for Expedited Hearing ("REH") was filed on March 23, 2015.[2] Following an April 14, 2015 evidentiary hearing, the trial judge issued an Expedited Hearing Order on April 27, 2015, compelling Employer to provide additional medical benefits. Employer timely filed its Notice of Appeal and the record was submitted to the Workers' Compensation Appeals Board on June 12, 2015.

### Standard of Review

The standard of review applicable in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). Moreover, the statute details limited circumstances warranting reversal or modification of a trial court's decision:

> The workers' compensation appeals board may reverse or modify and remand the decision of the workers' compensation judge if the rights of any party have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:
>
> (A) Violate constitutional or statutory provisions;
> (B) Exceed the statutory authority of the workers' compensation judge;
> (C) Do not comply with lawful procedure;
> (D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
> (E) Are not supported by evidence that is both substantial and material in the light of the entire record.

Tenn. Code Ann. § 50-6-217(a)(3) (2015).

---

[1] The PBD also raised a discovery issue which was later resolved by the parties.

[2] Although the REH sought a ruling based on a review of the file only, the trial judge later determined, pursuant to Tenn. Comp. R & Regs. 0800-02-21-.14(1)(c) (2014), that an evidentiary hearing was necessary.

In applying the standard set forth in subparagraph (E) above, courts have construed "substantial and material" evidence to mean "such relevant evidence as a reasonable mind might accept to support a rational conclusion and such as to furnish a reasonably sound basis for the action under consideration." *Clay Cnty. Manor, Inc. v. State, Dep't of Health & Env't*, 849 S.W.2d 755, 759 (Tenn. 1993) (*quoting Southern Ry. Co. v. State Bd. of Equalization*, 682 S.W.2d 196, 199 (Tenn. 1984)). Like other courts applying the standard embodied in section 50-6-217(a)(3) (2015), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

This case hinges on whether Employee came forward with sufficient evidence at the expedited hearing from which the trial judge could conclude that Employee is likely to prevail at a hearing on the merits on the following issues: (1) whether Employee's left shoulder condition arose primarily out of the work accident; and/or (2) whether the work accident caused a compensable aggravation of a pre-existing left shoulder condition.[3]

Tennessee's Workers' Compensation Law defines "injury" to mean "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." Tenn. Code Ann. § 50-6-102(13) (2014). For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence, and shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment." Tenn. Code Ann. § 50-6-102(13)(A) (2014). An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(13)(B) (2014). "An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the death, disablement or need for medical treatment, considering all causes." Tenn. Code Ann. § 50-6-102(13)(C) (2014). "The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(13)(E) (2014). At an expedited hearing, an employee need not prove every element of his or her claim by a preponderance of the evidence in order to be eligible for benefits. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, slip op. at 5 (Tenn. Workers' Comp. App. Bd. March 27, 2015); *cf. McCall v. Nat'l Health*

---

[3] Counsel for both parties presented concise and well-written briefs on appeal. The submission of such briefs clarifies the issues to be addressed and helps facilitate meaningful appellate review.

*Corp.*, 100 S.W.3d 209, 214 (Tenn. 2003). Instead, an employee must come forward with sufficient evidence from which the trial judge could conclude that the employee is likely to prevail at a hearing on the merits. *McCord*, slip op. at 5.

An employer takes an employee "as is" and assumes the responsibility of the employee having a pre-existing condition aggravated by a work-related injury that might not affect an otherwise healthy person. *Hill v. Eagle Bend Mfg. Inc.*, 942 S.W.2d 483, 488 (Tenn. 1997). An employer may be "liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case." *Baxter v. Smith*, 364 S.W.2d 936, 942-43 (Tenn. 1962). In *Trosper v. Armstrong Wood Products, Inc.*, 273 S.W.3d 598, 607 (Tenn. 2008), the Tennessee Supreme Court stated that "the employee does not suffer a compensable injury where the work activity aggravates the preexisting condition merely by increasing the pain." The court continued, "[h]owever, if the work injury advances the severity of the preexisting condition, or if, as a result of the preexisting condition, the employee suffers a new, distinct injury other than increased pain, then the work injury is compensable." *Id.* In addition to the requirements set forth in *Trosper*, the statute now requires proof that the aggravation arose primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-102(13)(A) (2014).

In the present case, Employee testified that he had not suffered any left shoulder injuries prior to the November 4, 2014 work accident. He further testified that he had no problems using his left shoulder prior to the work accident. This testimony was uncontradicted.

Dr. Petty, the treating orthopedist, indicated in his December 1, 2014 report that Employee suffers from a "partial thickness rotator cuff tear and what looks like a chronic labral tear." He further indicated that "these two injuries are unlikely to have been caused simultaneously." On February 3, 2015, Dr. Petty responded to the first questionnaire sent to him by Employer's counsel. In his response, he opined that the need for rotator cuff repair surgery arose primarily out of the bread cart incident occurring on November 4, 2014. His handwritten addendum stated, "[i]t may have aggravated the labral tear too." Thereafter, on March 24, 2015, after reviewing an affidavit containing Mr. Francis's description of the work accident, Dr. Petty marked "no" in response to an inquiry as to whether he could state to a reasonable degree of medical certainty that the left rotator cuff tear arose primarily out of the work accident. It is important to note that Dr. Petty did *not* opine in response to the second questionnaire that Employee's left shoulder condition is *not* related to the work accident, but merely acknowledged that if Mr. Francis's version of the event is accepted as accurate, then he could not state whether Employee's left shoulder condition primarily arose out of the work accident.

5

At this preliminary stage, the totality of the evidence submitted to date supports the trial court's conclusion that Employee is likely to prevail at a hearing on the merits. There is no dispute that the work accident occurred. Employee testified that he had no prior injuries or limitations involving his left shoulder. There is no testimony or other evidence to suggest otherwise. The trial court expressly stated that Employee "credibly testified that the pressure of the forklift pushing the buckled carts forced his left arm/shoulder backward." The court found Employee "to be very credible in his relation of the factual circumstances giving rise to the injury." The trial court weighed the conflicting factual testimony between Employee and Mr. Francis and found Employee's account "to be more credible." These findings of credibility are entitled to significant deference on appeal and the evidence does not preponderate otherwise.

Employer does not dispute that the surgery recommended by Dr. Petty is medically necessary. Given the trial court's conclusion that Employee presented sufficient evidence indicating that he is likely to prevail on the issue of causation at a hearing on the merits, it follows that Employer is responsible for providing medical treatment that is reasonable and necessary to treat the work injury as recommended by the authorized treating physician.

## Conclusion

Employee submitted testimony regarding how the work accident occurred and how his left shoulder was affected by this accident. The trial court accredited Employee's testimony over that of Mr. Francis and the evidence does not preponderate against the trial court's credibility determination. The authorized treating physician, Dr. Petty, opined that Employee suffers from a shoulder condition needing surgical repair, and there is no dispute that the procedure is medically necessary. Dr. Petty further opined that the need for surgery arose primarily out of the work accident based on Employee's description of the event. Accordingly, the trial court's order is affirmed and the case is remanded for further proceedings as may be necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

6